May it please the court. My name is Sam Mangel. I represent the City of Pocatello defendants in this case. This case is a qualified immunity case. We are asking this court to reverse the District Court's denial of qualified immunity to the individual defendants in the City of Pocatello. The United States Supreme Court has recently given some clarification on how this circuit and others should handle qualified immunity cases. And that is given against the backdrop of the beginning point, which is that qualified immunity must be granted to individual defendants, public officials, unless there is a clearly established law precedent that would indicate that the public official has violated the law. And for example, in this case, Judge Windmill failed to properly go through the qualified immunity analysis with regard to the individual defendants. So would the relief be to remand the case or to have the panel engage in the analysis of qualified immunity as it applies to the facts of this case? I think that this panel can reverse Judge Windmill's decision and enter an order stating that qualified immunity should be applied for the individual defendants in this case. Because it's a legal question based on the facts as viewed most favorably to the plaintiff. Correct. This court has de novo review viewing the facts in a light most favorable to the plaintiff. There were two different questions here. And I mean, what two different substantive constitutional issues in the case, right? And with regard to the promotion claim, what Judge Windmill found was that he thought that the record viewed most favorably to Walker demonstrated that the mayor, Mayor Blatt, did promise him the promotion. Is that incorrect? That is incorrect. So, and let's start with why that's important. If it's incorrect, then we don't get to the clearly established law question. You think it's just an incorrect reading of the record even viewed most favorably to Walker. No, let's assume that viewing the facts in favor of Walker, that Mayor Blatt gave him a binding assurance. That's hard for me to articulate, but let's assume that for purposes of this appeal. So you're saying, the answer to my question is no, it's not incorrect. Okay, it's not incorrect. It's not incorrect, but it's irrelevant in light of Idaho law that forbids the mayor from doing that and making it binding. Exactly. That's your position as I understand it. Exactly. And so are there any issues of fact concerning whether he had the authority to make, to make that binding commitment? No, there are not. And if we look at how that works, first, so on the qualified immunity analysis, we start with this Court's decision in Nunez that says, for the most part, until someone actually receives the promotion, or at least a binding assurance, he cannot claim that property interest. Just to put us in the right spot, this really isn't about qualified immunity. You're questioning his legal ruling, right, on the merits of the constitutional question. Correct. That's right. I mean, it's technically qualified immunity, but it's not, it doesn't get into how close in the facts are or anything else. You're questioning the legal ruling. Correct. And so to your question, if we work through what Idaho law says, we can get right to the first. Idaho Code 50-607 establishes the authority of what a mayor can and cannot do. A mayor has only those powers given, granted to the mayor. Idaho Code Section 50-204 says that the mayor can appoint such officers, but they must be only with the consent of the city council. And the defendant, Mr. Walker, wants to argue that, well, the mayor is like a CEO of a company with final decision-making authority. And that's simply not correct. The mayor has limited authority under Idaho law. And under Idaho law, it also refers to the authority granted by the city of Pocatello. And we can look at Pocatello City Code 2.06.010, which says that the mayor has authority to approve certain officers with subject to the consent of the city council. And listed on that list is the chief of police, for example, but it does not list a captain in the police department. Well, that's not quite fair because 2.06.020 says the additional officers to be appointed may include, but are not limited to, the following. So it certainly requires the consent of the city council, but I don't see how you can argue that it expressly excludes someone below the police chief. And I think when we take that against the backdrop of qualified immunity, does the law clearly establish that the mayor has the authority to appoint a captain in the police department? And if that was clearly established, then it may have been a violation of that for the city to ignore, effectively, what Walker claimed was an assurance from the mayor. Well, I mean, I guess the other answer is that if you read it along with the Civil Service Commission rules, that it does limit it. That's where the limitation is found, it seems to me. And that is an additional limitation that is provided under the City of Pocatello Code. And I would like to point this court to one case. We outlined the Hadley v. DuPage case, which is a Seventh Circuit decision. And in that case, the Hadley court cited to Ballo v. Federal Reserve Bank, and I didn't break that case down in our briefing, but that is a Ninth Circuit decision, and it's a Ninth Circuit decision a little bit earlier from 1981, 650 Fed Second, 1093. In that case, I thought that it was instructive on this specific issue. Ballo was a regulatory attorney for the Federal Reserve Bank. He received a letter from the bank president assuring continued employment, that his continued employment was secure. But what the court found was that the statute establishing the Federal Reserve Bank did not explicitly grant authority to the bank president to make such assurances. Why isn't there a point at which apparent authority takes over, I mean, essentially? I mean, if somebody is representing that he has the authority and the person is relying on that apparent authority, I understand that the underlying question here is a property right, but it isn't clear to me that one goes behind a representation of authority always. And that's a good question, and I don't see any of the courts discussing apparent authority in the context of whether or not a property right is sufficiently established to invoke constitutional protection. Well, Perry is about that in a sense. I have a question about the proceedings here. I mean, Judge Widmo is not a sloppy judge, and it surprises me that he didn't address any of this. Was it the argument made to him, the authority question? Yes, this was all briefed at the summary judgment stage of proceedings. And, again, I think that that's the important issue for this Court to look at, is that the rubber really meets the road with these directives from the Supreme Court recently that district judges need to go through. But that's a completely different point. You're arguing about the legal question of whether there is a property right on this record. And we haven't gotten to the clearly established law issue yet, right? Well, right, sure. And what I'm saying is, was the argument made to Judge Widmo that the mayor did not have authority to make this promise even if he made it? Yes. Yes, that argument was made, and that was not addressed by the Court. And we think that that's reversible. And I think that this Court can enter a finding that, based upon Idaho law, the Pocatello City Council, that the mayor did not have the clearly established authority to make that appointment, and therefore Walker can't claim a protected property interest based upon the mayor's representation, verbal representation to him. And with that, that really ends any claim that depends upon Mr. Walker's claim that he had a protected property interest in a prospective promotion has to fail because he has not established that. Our ---- Would that cover the ---- that wouldn't cover the disciplinary hearing question that he raises, though, right? Right. It's a little bit of a separate argument on the disciplinary question. But if he had no protected property right, we don't get there. That's the end of the case. Correct. It's a threshold question. If he doesn't have that protected property interest, it doesn't invoke the penalty of due process rights that he's arguing for at that ---- For either one of the disciplinary matters. Correct. That's exactly correct. But it's his only disciplined impact that he's claiming on the promotion. As I understand his claim, and Ms. Ulrich can clarify, he is claiming that he was denied a promotion. That is the damage that he suffered. He was not fired. He was not demoted. He was not docked any pay. His rank wasn't changed. The only thing he is claiming is that ---- He got a letter of reprimand in one of them. Correct. He got a letter of reprimand, and that took him out of the ability to be able to apply for the next promotion within a year, and that was subject to the civil service rules established by the city of Pocatello. So there was an opening for a captain position that he was unable to apply for because he had to be reprimanded. Isn't there a difference between the eligibility for a promotion and the promotion? I mean, why doesn't he have a property interest in eligibility to be considered for a promotion? I am not aware of any court that has said that, and I don't see how the analysis could be any different for the eligibility for promotion than for the promotion itself. It would have to still be a clearly established or a binding assurance of that promotion before you can claim a constitutional property right in that. Well, with respect to the one reprimand, if I understand it, I may not be understanding it correctly. Is that the procedure in which he claims that he didn't have an impartial decision maker? Yes. So it seems to me that that is a standalone claim, because if he was assuming that he had a property right at eligibility, the only attack he has made is to say, I needed a different decision maker, and there is no clearly established law on that. Correct. There is not, and that's also an important question. So he was at a pre-termination, not a termination hearing, a pre-termination hearing, and he's claiming that he had a right to an impartial decision maker, and we have outlined the law in the District Court of Idaho that states that you do not have a right to an impartial decision maker until your employment is on the line. So this was a pre-termination hearing, not a termination hearing. It seems to me that in response to Judge Berzon's question, we would have to reach that issue even if there is no property right in the promotion, because they're really separate events and with separate sequelae, I guess. And so I guess that's the only thing I'm saying is I think they're analytically separate. Yeah, they are, and I misstated something. I want to make sure I'm really clear on this point. I said pre-termination. This was not even a pre-termination hearing. This was a disciplinary hearing. He was not being placed on notice that he may be terminated. And so while it's just a disciplinary hearing. But what I'm — if you have a — if the rules say that anybody who is, you know, a captain or is an exposition is in the force and places in the top three of the exam is eligible to be considered for a promotion, and they decide because of this, they give him this reprimand, and they say, no, you're not eligible, I don't see why that isn't a property right that would give him the right to some hearing. Well, I think that the answer to that question is that all his eligibility to participate in that did not guarantee him the promotion. I understand that. But it guaranteed him to be considered for a promotion. Well, and the consideration was still contingent on, even if he made it through to the top three in testing, he was a one-in-three chance of getting selected under the discretion of — But, I mean, we have — you know, there are Supreme Court cases about affirmative action where people say, I had a right to be considered without regard to my race, for example. That's my right, whether I would have gotten it or not, because there were people who wouldn't have gotten it. But I had a right to be considered. Well, I think he had the right to be considered, but not when he engaged in the conduct that earned him the reprimand. But that's why I say if he loses with respect to his challenge to the reprimand, then we get to the question of whether there's a property right in other respects. That would be the second step. Are you conceding that even if he had no binding reassurance, he had no property right to the promotion, that there is a stand-alone claim that he had a constitutional right to an impartial decision-maker? That's what his assertion is. Well, what is your position? My position is that he has — the threshold analysis is he has to prove he had a constitutional right to the prospective promotion because that's the right that he's claiming that he was denied. But I think we've explored the possibility that there could be a stand-alone or a different type of claim to an impartial decision-maker in the disciplinary context. And I want to understand your position. Are you saying that if he had no initial property right, that's the end of the case? Or do we move on to a second question, that is, whether he has a stand-alone claim? I think if he has no property right, that ends this case because that's a required element of the due process claim. That's just a nonresponsive answer because the question is, could he have a separate property right whether or not he has a right to the promotion? That's the question. Yes, and I guess he could, yes, if you want to look at it in that two-step analysis. You may have a minute for rebuttal when the time comes because we used a lot of your time. May it please the Court. My name is Amanda Ulrich, and I represent the response, or I'm sorry, appellee John Walker in this matter. I think the first thing that we should clear up, and one of the problems, I think, as was pointed out by Judge Berzon, is that Judge Windmill didn't address necessarily everything head-on that Mr. Angel brought up. And that's because the first time on summary judgment that anything about authority, period, it was raised on reply. And it was in reference just to the Hadley case. There was nothing about Idaho Code brought up whatsoever. In fact, the first time the first time. But that's what I was asking. So he was not told. Right, yeah, exactly. So the Idaho Code argument was not brought up until reply on appeal. So I do think — But it was brought up. You just said it wasn't brought up, and now you're saying it was brought up. No, no. So the Idaho Code argument was never brought up below. The Pocatello Code was not brought up? Correct. The Pocatello ordinance and the Idaho Code arguments were not brought up below on summary judgment at all. The only thing that was brought up on summary judgment below was in their reply brief. So we had no chance to put anything in the record to respond to it. It was just the Hadley case. And that's the only thing that was raised, that Seventh Circuit case. So the problem here is we're trying to operate in the situation where we haven't even had a chance to put things in the record that would — Well, it's a legal question. It's not a factual question. What does Idaho law require, or what does the Pocatello Code say? It's not a factual question where you get, you know, some affidavits from a witness who saw the accident or something. So I'm not sure what difference that makes other than to explain why Judge Windmill said what he said. Sure. So here's why that matters, I think. Because Idaho Code allows city council to delegate certain powers to a mayor, and that's done in various ways. It's done in the city personnel policy. It's done in the civil service rules. It's done in practice. And so there are various things from, for example, the city personnel policy about the mayor having the authority and having to have to approve vacancies that are filled that we would have otherwise put in the record had we been put on notice about the authority arguments. And I suppose there must be a practice about what happens, whether these things actually go to the city council and whether they're completely pro forma and so on. Correct. And, in fact, if you look in the record, Chief Marchand testified about his practice of going and talking to the mayor about people he was putting in. But he's putting them in. That's the difference. Because, as I understood, the Civil Service Commission rules, the police chief is the one who appoints to the position that your client wanted, and he may consult with, you know, astrologers or the mayor or whoever he wants, or she, but it is the chief of police who has that authority explicitly. Well, I think, but it doesn't preclude the mayor also weighing in on that decision. And, in fact, in the city personnel policy, which I think is at the record on, I think it's 239, there is a specific comment or statement, and it's in the sort of preamble of the city personnel policy. And it gives the mayor authority to modify personnel policies on a case-by-case basis. Including Civil Service Commission rules? Well, I guess it depends on if it conflicts or not. And that's a danger. Well, that's not my question. Does the mayor have authority to alter the Civil Service Commission rules that apply to the police department? I think based on what's in the record now, no. But I think there's other things, such as there's a portion of the Civil Service rules that aren't in the record that apply specifically to the chief of police. And those aren't in the record. And that — Couldn't we take judicial notice of those if they're actually announced rules? Maybe you should get them to us. You haven't submitted them to us for judicial notice, but presumably they would be subject to judicial notice. And that's entirely possible. Let me go, because we're taking a lot of time on what is and isn't in the record. And I'm interested in your answer about this disciplinary hearing question. The disciplinary hearing is relevant only because the resulting discipline made your client ineligible for one particular promotion. And the question is whether there was clearly established law that required an impartial decision-maker at a non-termination-related disciplinary proceeding. And I have difficulty seeing that. What is the clearly established law on that particular question? Sure. So — and just to give some context as well to the hearing. So this was actually a pre-termination hearing, potentially, because if you look at the record and the notice that Lieutenant Walker was given, it says that the disciplinary action is up to and including in termination — But if he had been terminated, then he would have gotten a post-termination hearing. Correct. And then, as I understand the clearly established law, he wouldn't have been entitled to a unbiased pre-termination hearing because he was getting an unbiased post-termination hearing. Right, right, right. So where is the clearly — give me a case — the clearly established law that requires for a reprimand having had an impartial decision-maker? Sure. So I think, number one, we're looking at cases like Walker, Clements, Stivers, just in the due process context. And I think it's clear the city recognized that this is beyond just a termination issue. Because when you look at the civil service rules, they not only provide a post-termination review by the Civil Service Commission of a termination decision, they provide a review for reduction in rank, they provide a review for demotion, and I believe there's one other category. And I think here — That's right, because those are adverse actions. This was basically a piece of paper in the file.  None of those things happened to him. Right. But I do think it was functionally a de facto demotion because he was guaranteed that when that position — So you're saying that not getting a promotion equals a demotion? I do. In this particular case, and this is why, is because the mayor promised him that if he did the things — Okay, that's a different question. That relates to whether the mayor has any authority under law to make that promise such that it creates some sort of property right, or whether it's just a friendly reassurance from somebody who likes you. Sure, and I think there's questions of fact in it, as Judge Widnall said, about that issue of authority. Well, it's a legal determination. Either the mayor does have authority or the mayor does not have authority. That's not a factual issue in the normal way. It's a matter of what is the applicable state and local law, is it not? Yes, and I think there are aspects of the authority that was delegated by the city council that are not in the record because this wasn't raised. Well, but you had a chance to — you didn't put in any sort of supplemental — Your burden is to show that he had authority. The binding — that he made a binding means that he had the authority to do it. Did you put anything on the record that would indicate, either legally or factually, that he had such authority? I think we did. I think because we put the section of the personnel policy in the record that says the mayor can change basically on a case-by-case basis. Personnel policy, I think that's in the record there. But it doesn't say he can change the civil service rules. It doesn't say that specifically, but I think — Well, it doesn't say it even generally, does it? It says personnel policies, and they are distinct from the civil service rules, are they not? They are two separate handbooks. Okay. But — And the civil service rules give the sole authority to the police chief. I guess I disagree with that because I don't think it's exclusive. And I think, as you mentioned to Mr. Angel, the way the language reads is it doesn't say you can't — No, that's the Pocatello Code. Oh, okay. I'm sorry. I apologize. The civil service rules are absolutely clear, in my view. Rule 2, Section 1, the chief of police is designated as the appointing authority. Subject to the rules of the commission, the police chief shall appoint the following positions, and it includes what your client wanted. So I guess I'm troubled by the idea that you think there's more stuff out there, but you didn't seek to put it in as a supplemental excerpt or judicial notice, and we're left with what we have. And I just don't see the mayor's authority to make any sort of binding promise whatsoever. And I guess, again, I don't think that that — the way the civil service rules read, say that the mayor cannot make a decision. But I guess as to the issue of is there some protective property interest that additionally goes to the unbiased decision-maker issue, I do think, although, you know, it wasn't brief, that there is case law that basically says eligibility for a position period is a protected property interest. Okay, but then your argument about the reprimand is solely an argument about the decision-maker. That is the argument that you make about the disciplinary action. And if you're wrong about that, then we are left with the bare question whether the mayor had the authority to give this person reassurance that was sufficient to create a property, right? And just so I'm understanding the question. Well, your only challenge to the disciplinary action, it seems to me, is that it wasn't done with a proper decision-maker. That's how I read your brief. Right. Okay, that is your one and only challenge to that reprimand. So if we disagree with you about the validity of that argument, then we move directly to the promotion itself and whether the mayor could create a property, right? Because if we disagree with your argument that there was something wrong with the discipline, the discipline is. It's just there. So I guess just so I'm tracking and making sure that I'm understanding. I do think so there's two issues, right? The property interest in the promotion in and of itself. The actual conversation from the mayor where the mayor says, I promise you that you will be the next captain. But I think there's also an issue that I think was touched on today as well as to, well, is there a separate issue about the fact that that eligibility was taken away. I understand that. But the only argument you're making about that is that we didn't get the right decision-maker. So if you did get the right decision-maker, there's nothing wrong with it, and then we move right on to promotion. That's my only point, that they are one precedes the other. But let me see if I understand this. The oral assurance or the oral promise that the mayor made, that deals with one promotion. Did the unbiased decision-maker deal with a separate promotion or is that the same promotion? That was the same eligibility issue. I think what the problem is this, that with regard to the first, there were three different times when captains were promoted, right? Actually, I think four. The first time there was no discipline problem. Correct. That's the oral assurance. Right. Right. And that's when the recording happens. After that first time, when he doesn't get the promotion, he has the conversation with the mayor and says what happened. So that's before. After that, because the promise, even if you look at it most favorably to him, was that if you're essentially on the eligibility list, then you'll get it. So with regard to the other three, he wasn't on the eligibility list because of the discipline, as I understand it. Right. Well, I think it was. And therefore, the promise didn't run. Right. So it was that second one that was in the fall slash I think early winter of 2013 that happened after that conversation where he was taken off the eligibility list. Right. Yes, correct. So he was off the eligibility list for the next two as well? I think he was on the eligibility list for. . . It's a one-year disqualification for. . . Right. Right. But I don't know what the years, what the timing was with the. . . Right. Yeah. Right. Exactly. So and I think those others were 15. Right. But let me go back to the question of the state of the record. Your brief in this court is completely unresponsive on the authority question. You say nothing about it. And my apologies for that. I think the reality is. . . Including. You don't say. I'm not going to say anything about it because it wasn't before the district court. Right. But I think the reality is that Judge Windmill actually did thoroughly address that. And, in fact. . . Well, he didn't address it. You're saying he didn't address it because nobody asked him. Well, I guess the binding assurance issue. I'm looking at it. . .  I'm talking about this part of the binding assurance question. Sure. All right. Idaho. . . The city came in in its opening brief and said, you know, very interesting about the binding assurance, but he had no authority. And you say nothing. Zero. Am I right about that? In your brief. In. . . Your brief. I think we distinguish Hadley, if I remember right, in our brief on appeal. So I think we do address it in that sense. Maybe I'm. . . Okay. I will find it. I'll find it. I'll find it. Well, we'll figure it out. You only have a few seconds left if you want to sum up. Well, I think in some there was an assurance made by the mayor, who's the chief executive officer of the city, and it says that in the personnel policy. He's in charge of the day-to-day running of the city, and that's what it says there. So I do think there is information in the record upon which to base a decision that, yes, he did legally have the authority to bind the city with the promise that he made, and there's certainly sufficient evidence in the record to support that that binding assurance was made. Additionally, I think it was clearly decided law because of Nunez on that particular issue with the promise of a promotion. And additionally, I think on the impartial unbiased decision-maker issue, that was also clearly established law, because if he had a property interest that required due process, due process always requires that you have an unbiased impartial decision-maker. Thank you, counsel. Thank you. Thank you. Maybe if I could just follow up on one of the questions that the court answered about the civil service rules. They are adopted by the city council. That's in the record at 260. You'll see the stamp on the bottom of each one of those civil service rules indicating adopted by the city council on the date. The mayor does not have the authority to unilaterally change those. So those rights that are established by the civil service commission exist for the employee. And then I guess just the final point that I wanted to make back on the clearly established issue with regard to the disciplinary hearing or the termination hearing. And Judge Windmill just did not analyze that at the nuanced level of this was a disciplinary hearing, this was not a termination hearing. And that's where this court on a de novo review can turn around and reverse that and find that for purposes of a disciplinary hearing. Is there any instance in which there is a protected property right and there is no right to an unbiased decision-maker somewhere along the way? I don't know. That would be hard for me to answer. But I think in the context of a disciplinary hearing, that might be the example because where termination is not on the line, you don't necessarily have that right to an unbiased decision-maker. That's going to be your supervisor making that decision, where it's just going to be a written record. Well, that's not a hearing. I mean, you then have no due process. I mean, if the person who's made the decision is now going to decide whether to make the decision again, that's – I mean, that is allowed on pre-termination – not necessarily – or pre-deprivation hearings sometimes if there's going to be another hearing. Right. But if there's not going to be another hearing, then you're never getting an unbiased decision. But here it's just important to keep in mind that Mr. Walker had termination been on the line. He had the backdrop of the civil service. I understand the relevance of that. He was going to get that hearing. Fine. But his termination, as it turned out, wasn't on the line. But if we believe that he did lose something, i.e., that he had a property interest in, i.e., being considered for this position, then why – we still have the question of if he's entitled to procedural due process. Is there any instance in which you're not entitled to an unbiased decision-making? Well, again, I would just say I just don't think so if the issue is only pre-termination, if termination is on the line. In a sense, every disciplinary action may have an ultimate effect on promotions or any other employment decision. I guess you would have to say that the disciplinary hearing directly impacted, that is, it was connected to or related to, not that it could have a potential effect on future employment decisions. Is that it? I think that that's what Mr. Walker would argue, is that, yes. But I think that we have to gauge that against the backdrop that the civil service rules would have given him that emotional stability. They would have an avenue to pursue that particular theory, not a constitutional avenue. Right. But he would have been protected under what the Constitution would have required. Okay. Thank you, Counsel. Thank you. My pleasure. The case just argued is submitted, and we thank you both. Our final case on this morning's docket is West v. The City of Caldwell.
judges: Graber, Berzon, Robreno